Case No. 24-7081, Dutch Telekom, A.G. v. Republic of India, Avalanche. Ms. Menaker for the Avalanche, Ms. Boykin for the Appellate. Good morning, counsel. Ms. Menaker, please proceed when you're ready, and I apologize if I pronounced that incorrectly. Good morning, and may it please the court. India has reserved three minutes for rebuttal. India respectfully requests that this court reverse the district court's judgment, which took the extraordinary step of enforcing an arbitral award against a foreign sovereign, without even giving that sovereign, India, an opportunity to brief its preserved merits defenses after the district court denied its sovereign immunity defenses. India has raised several issues on appeal, all of which is preserved, but today I'd like to focus on two of those issues that are primed for this court to reverse the district court's judgment. First, India did not waive its preserved merits defenses when it invoked the P&ID framework. And second, when reviewing those merits defenses, there is not clear and unmistakable evidence that the court should defer to the conclusions of the arbitral tribunal. So turning to the first of those arguments, the district court committed reversible error by violating the two-step framework that this court established in the P&ID versus Nigeria case, which held that a foreign state is entitled to first have its colorable assertions of immunity determined before having to defend on the merits of a claim. The difficulty for you here is that your arguments about the terms investor and investment, they may be right or wrong as a substantive matter, but they don't seem to be colorable as an immunity matter in light of our cases. With respect, Your Honor, as of the date when we filed our motion to dismiss, which was back in September of 2021, our immunity defenses were more than colorable at that time. And that is because up until that time, there had been ambiguity and disagreement amongst the courts as to whether our type of an immunity defense, which was that CT... You have Stilix, which is about the term investment. Stilix and Chevron are about investment and investor arguments in a bit, going to scope. That's right. They're both distinguishable, Your Honor. In Stilix, Moldova, that case was under the Moldova-Ukrainian BIT. And Moldova argued that the claims did not fall within the scope of the agreement to arbitrate because the investor had structured its investment through the BVI, allegedly to evade Ukrainian currency controls. And so that was more akin to an argument that we made and preserved on the merits, didn't make, preserved on the merits, our fraud argument. They're arguing that the investment was made illegally. And therefore, the scope of those claims did not fall within the agreement to arbitrate. In Chevron, Ecuador said, again, that contract claims that Chevron wanted to bring did not fall within the scope of the arbitration agreement. And in your Next Era II case, in fact, you distinguished Spain's arguments from the claimant's arguments that were made, excuse me, the respondent's arguments that were made in both Stilix and Moldova. And if you look at page 1130, 1103, excuse me, of the Next Era II case, you can see there that this court says that in both Chevron and Stilix, the sovereigns argued that they hadn't agreed to arbitrate because the arbitration agreement did not extend to the disputes. So that was a scope issue. And it then characterized Spain's argument as being somewhat different because there Spain was arguing that the energy charter treaty did not extend to EU nationals like the claimants there. So that was an issue as to whether the investor was a proper offeree of the offer to arbitrate in the bilateral investment treaty. And that is akin to the argument that we made before the district court. And so certainly at that time... You agree that the through line of all those cases is that arguments about the existence of an agreement go to immunity and therefore jurisdiction. Arguments about the scope of the agreement go to the New York Convention merits defense. Yes. That's why in this case, there's no doubt... There's no doubt that India signed the bid with Germany and it protects German investors with regard to investment disputes. And there's a question about whether the investor includes the corporation one line up in the ownership chain. It seems as much about scope as can be. But I respectfully disagree because it is about the existence of the agreement. The agreement needs to be with a party or for the benefit of a party. And here, simply by saying that you are... There is an agreement. India has made an agreement with Germany to protect German investors. There's a question whether this corporation is a German investor. Correct. And so there, we made an agreement for the benefit of German investors. So one necessarily has to answer the question as to whether you are a German investor that falls within the scope of that agreement. Excuse me, within the confines. Well, I'm using that terminology, I think, in a different manner than the other cases use it. When you talk about the scope of claims, because it's very different to say that we agreed to arbitrate with German investors. And my question here, like in Chevron versus Ecuador, but we didn't agree to arbitrate contract claims. We only agreed to arbitrate treaty claims. That's a scope question. But clearly, it cannot be, for instance, that a group of German university students go over to India on vacation and one trips and falls in a hotel room and says, well, I will bring a claim under the bilateral investment treaty. This is made for the benefit of me. I'm an investor. I'm helping the Indian economy. I'm paying for hotels, cab fares, right? There has to be some limitation to determine whether there is an arbitration agreement, whether there exists an arbitration agreement. And again... In that scenario, the way that would come up in an FSIA context in our court, it would be predicated on an arbitrator actually concluding that it's within the terms of the arbitration agreement so that the arbitrator has jurisdiction, right? I mean, I take your point that there's going to be some line-drawing questions at some point that seem like, under our decisions, they actually do go to the existence of the agreement rather than to its scope. But it would have to be a context in which the arbitration panel or the arbitrator, depending on what sort of procedure you call it, would have concluded that the agreement actually does give that claim to them. And it would still have to be so outlandish like the German tourists that it would then come to us and the argument would be made, well, that actually went to jurisdiction rather than to scope. Sure, but you would have de novo review over that. And yes, and there are arbitrator panel determinations that could be outlandish in that regard. But you would think there that the state would have the opportunity to say that they are immune, not just depend on the merits of that claim, but to say we are immune, we never agreed to arbitrate. So I'm not asking you here now to agree with me on the ultimate question of our immunity, but to look back into September 2021 and say it certainly was colorable at that time. And what shows that it was colorable... And what happens after that is next era. Well, it is next era, but the fact... Is there something else? No, it's next era. And the fact that this court heard next era too and was looking at two divergent... Well, there were three district court decisions, as you know, but two divergent ones. So you had Nineran and you had Blasket. And in Blasket, the district court judge found, contrary to next era too, you reversed that decision. So clearly there, that was a colorable argument that they were making there at that time. The court decision was post-Chevron and still. That's correct. That's correct. So that's post-Chevron, post-Stilax. And I think in next era too, the court actually looks... And the way that it's characterized in these cases, it's extending the holdings of those cases. It's an extension because it wasn't clear prior to that time. Another example that we gave in our briefs was the case where actually Deutsche Telekom's counsel is counsel in that case for Equatorial Guinea, excuse me, Marcel Clinken, where that was three months after we filed our motion to dismiss. And the respondent there argued that the district court's rejection of its immunity defense should be reversed because of Blasket, right? So they were making the argument there that that was still ambiguous enough. Can I ask a question about how you would ask us to construe the colorability standard from the NID and with respect to two sub-aspects of it? So one is I read the NID as borrowing from Bell v. Hood, which is a pretty strict standard. I mean, it has to be so insubstantial that the claim that's overbrought in the trial court wouldn't even support federal jurisdiction. So that's part of the question, is what do we do with that standard vis-a-vis colorability in the way you read our opinion? And then secondly, if there's panel precedents, I know you have an argument that even under the panel precedents as they existed at the time, it's still colorable because look at what happened with Nexterra and look at what happened to district court on district court. I understand that. But let's suppose the panel precedents are preclusive of that. And so let's suppose it's post-Nexterra. Let's make it easy. Let's suppose it's post-Nexterra. But then the argument for colorability isn't that you actually have a colorable claim under existing panel precedent. It's that there's an abstract way in which you have a colorable argument because you're not taking the panel precedent as a given because you might win in the on-bank court or might win in the Supreme Court. So what's your reaction to either or both? Well, I agree with your suggestions on both, which is first, it's a very low standard or a very low hurdle for us to get over to show colorability. And in a slightly different context, I've seen it as a hint of a suggestion. And if you look at PNID itself, that was a decision of 2020 of this court. And this court said that, reversed and said that the district court had to hear the immunity arguments that Nigeria was making before its merits arguments. That immunity argument that Nigeria was making in that case, that case was the arbitral seat was in London and a Nigerian court had taken jurisdiction and vacated or set aside the award. And Nigeria was arguing that as an issue of immunity saying, well, our award has been set aside, not by the court of receipt, but has been set aside and therefore no award exists and we're immune. And this court found that that was a colorable enough assertion to go back. And what's interesting is if you look at the 2022 decision, because that case went up and down the courts a bit, of PNID, the court here rejects the immunity or upholds the rejection of the immunity claim and finds that it's precluded by 2016 precedent of the court. Finding that when an award has been set aside, if you're using that as an objection or a defense, that that is a merits defense. Only under the New York convention, it doesn't implicate immunity. So in 2020, when this court said that Nigeria had the right to have its immunity questions heard before the merits, you already had a 2016 precedent that you said foreclosed the merits of that defense. And yet it was still colorable and it's still entitled them to have that heard. So is it your position as well that India has had no prior opportunity to present these defenses? India, that is correct. Because on the two immunity defenses that we did raise, no US court has reviewed those defenses because the district court found that they weren't immunity defenses. It then said they would consider them as New York convention defenses. However, it said that it deems the parties to clearly and unmistakably delegate the authority for deciding those defenses to the arbitral tribunal and it had no authority to second guess those determinations. So no one has looked at that. And then with our preserved defenses, no US court has considered those either. And we- Those arguments are considered elsewhere, right? And haven't been met with- Only some of them. From your perspective. Some of them. So there are two. One is fraud. One is the essential security interest. Deutsche Telekom acknowledges that neither the arbitral tribunal nor the Swiss court had made any determinations on fraud given the timing of those allegations. With the essential security interest, those courts- Excuse me, the arbitral tribunal and the court have looked at that. But again, that has no bearing on the United States' court's ability to review those determinations. And we contend that the review of those determinations should be an independent review. They ought not to defer to the arbitral tribunal's determinations because there simply is no clear and unmistakable evidence that the parties agreed to delegate to the tribunal the authority to make that determination. The district court relied on dicta in some cases of this court, the Stilex, and I believe the Stilex case, when it held that because the bid incorporated or referenced the arbitral- You're losing me. I'm sorry. Are we talking about the investor investment arguments that you want to make into immunity, but if they're not immunity, are they either substantive New York Convention defenses or are we talking about the other ones? I was talking about both because the ones that we have not had a chance to brief yet and that we preserved, of course we want those heard as New York Convention cases. We had, and to clear up any misconception, we had no intention of getting a second bite of the apple on our immunity defenses. So if they had been heard as immunity defenses, we would not then have re-raised them under the New York Convention. It would not have made sense. They would have been determined. They have not been heard, though. So if we went back, we would want to raise them under the New York Convention. Of course, we'd want- So as to those defenses, the investor and investment, but not the other two. Yes. Then we come to the question whether the district court- He goes on to resolve them as New York Convention defenses and he says, it's not for me to decide because those defenses were delegated to the arbitrator. Correct. So that's what he said, although we say that is incorrect because we didn't delegate those to the arbitrator, nor did we delegate our preserved merits defenses to the arbitrator. The only thing that the district judge looked at was the fact that the unsuitable rules governed the arbitration and those rules contain a standard competence-competence clause. There is no clear and unmistakable evidence, and that's, of course, the standard under first options, that the parties to this dispute to the bit, which is to be interpreted as a contract, that they intended to delegate exclusive authority to the arbitrators to determine these issues. If you look at BG versus Argentina in the US Supreme Court, a court there says very clearly that ultimately interpreting a treaty is like interpreting a contract and what is important is the intentions of the parties. Here we have two things that I think are of utmost importance. One is Argentina Council. This court was reversed in BG versus Argentina because the Supreme Court said to us, all of these questions, regardless of the fact sovereigns are involved, are to be decided by the arbitrator. Yes. Yes. No. I take that as very strong language from the Supreme Court. Yes, but what the Supreme Court said when it had made that determination, it said that what you need to do to determine if it is to be resolved by the arbitrators is to look at the contracting party's intent. And so that's what I want to look at here. And here, the contracting parties to the treaty are India and Germany. And there can be no doubt that India and Germany understand the UNCTRA rules and Article 21 in particular to afford the arbitral tribunal an initial determination of these issues to be later reviewed by a court. And that is absolutely, Deutsche Telekom doesn't contest that. That is their understanding of those clauses. And when you look at our bit in particular, in Article 9 to B5, it says that the award shall be enforced in accordance with the national laws of the contracting party where the investment has been made. That's Indian law. So, and we have other arguments, of course, that we construe that choice of law clause as being a form selection clause, but even at its most narrow, as a choice of law clause, that means that in enforcing this award, we have to apply Indian law. There is no doubt that Indian law interprets the UNCTRA rule as simply giving the... So, can I just ask a question about where this fits in the overall architecture of what we have before us? So, you took a collateral order appeal from the denial of dismissal on jurisdictional terms, right? I think not. I think we waited until final judgment was entered. It was a few weeks later. Oh, okay, true, true. Yeah. Okay, so, but then what do we have before us? Because we clearly have the jurisdictional questions before us. And then if we... Suppose we disagree with you on jurisdiction so that we assume that the questions that you think are jurisdictional ones actually go to scope. Let's just suppose that. I know you resist that, but let's just suppose that. If that's true, then we also have before us what the district court did to go on and decide the merits of that question as opposed to the ones that are just bracketed off and never addressed by the district court because the district court said that those were effectively waiver forfeit advice. So, if we go on to the UNCTRA question, the question of does the provision in the UNCTRA that deals with what the arbitrator has jurisdiction to do, we address that one as well. Yes. If we get past your jurisdiction. I believe so because the court, if you go back and say that it was error to deny our... You can either deny our foreign sovereign immunity defenses or you can say, well, they were denied. They should have been scoped. However, you should not have then said that we waived our ability to bring the merits defenses. And then since the court in its order has already said that it finds itself bound by the arbitral tribunal's determination of those and wasn't able to second guess, I believe that that is then before you now and we're asking you to reverse on that. That is a de novo determination, whether there was clear and unmistakable evidence that we intended to delegate this question to the arbitrators. And so, if you reversed on that, then saying there was no clear and unmistakable evidence of delegation, then it would be remanded, vacated and remanded, and we would have heard our New York Convention defenses under an independent review standard. The Indian law that you cite as invoking a model that the arbitrator gets to decide arbitrability questions in the first instance, then subject to judicial review, is that specific to UNSATRAL or just general India's version of EG? This is presumptively how things work. I would need to double check, but I believe it does contain some case law that would have dealt with UNSATRAL because India, for instance, is not a party to the exit convention. So they go under UNSATRAL. Exactly. I guess the reason I ask is we have cases, the same cases I was citing at you earlier. Those cases say that invoking a provision in the contract which calls for application of UNSATRAL rules which permit the arbitrator to decide questions of arbitrability is sufficient to assign those questions exclusively to the arbitrator. Sure. I just have a few responses to that. First of all, those cases are looking, again, what you need to do in each of the cases is just not to say that there are the UNSATRAL rules which are being referenced, but you have to look at the intent of the parties. So the court presumably did or should have looked to the intention of the parties in those cases to those particular bits to determine if there was clear and unmistakable evidence. And that's what we're asking this court to do here is to not have any flatline rule. We need to look to the intention of these parties. And there's just no way that India and Germany intended to delegate exclusive authority to the arbitrators when in our submission. The background law. Because the background law and... Yeah, Paul. Oh, go ahead. I was just, I mean, what's odd about this is if you were thinking about the world from first principles, you might think that only the judges can decide these questions or only the arbitrators can decide these questions or door number three, the arbitrators decide in the first instance in the judge's review, which you say is Indian law. And yet, you know, BG says your options are door number one or door number two. And I don't know what to make of that. I mean, you know, tend to think I'm bound by Supreme Court precedent, but is that just no one in these, any of these cases is thinking that contract might provide for door number three. Is that what's going on? Well, I think that the U.S. is somewhat unique in this regard because I don't know of any other jurisdiction that does interpret these provisions in the manner that the U.S. courts have done on occasion. But again... Because our non-FSAA law is so arbitration friendly? I don't know why it is. I think that, but... I also think that BG in Argentina, and not to just repeat myself, but there first it was looking at a different issue. It was looking at a time, a procedural time issue. But it did emphasize, the court did emphasize that what you need to look is for clear and unmistakable evidence and you need to look at the party's intent. And I'd also just point the court's attention to a statement in DT's opposition that we have quoted where they say that, and I quote, this is at 21, through the incorporation of the UNCTRA rules, India agreed to, quote, to delegate disputes about arbitrability to the arbitrators subject only to post-award judicial review. That's what we're asking for is post-award judicial review. Yeah, the thing about that is that may well be the background principle in Indian law. I'm not sure that that's not the background principle all over the place. But yet we still have these decisions that treat the UNCTRA provision and the parallel wonder under ICSID as not only creating a regime in which the arbitrator gets the first crack subject to judicial review, but it's creating a regime in which the arbitrator gets the first and last crack. It just seems like that's... I mean, this competence idea is not some unique principle that applies in the narrow corner of the universe. It seems like it's a pretty universal one abroad. But yet we still have, our decisional law still says that these particular provisions, I think it's basically parallel between UNCTRA and ICSID that what they do is that they give it to the arbitrator and the first citizen. That's exclusive of subsequent judicial review. Well, I would disagree with that because there is a very material distinction between UNCTRA and ICSID insofar as ICSID has a two-tier layer of review. It's an independent review. So after you have your arbitral award, if you want to review that under essentially the same standards as the New York Convention, I mean, slightly different, but it's ICSID Article 54. It's differential, but what you do is you don't go to court to do that. You have a second tribunal. It's called an ad hoc committee within the arbitral process. So you have two. And then when you go to court, it's a much more summary procedure. So I don't think it can be compared because of course there you're deferring to the tribunal or the ad hoc committee. You've already had your level of review. Whereas here with UNCTRA, you haven't. And I would just also point the court's attention to the DTK versus hotels case, which was before the second circuit in 2021. When we're talking about these arbitral rules automatically, meaning that you delegate to the arbitrators an exclusive determination, the second circuit cast that into doubt when it said you have to look at the particular circumstances, which is what we're saying here. There, it was an arbitration clause under or an agreement governed by the AAA. It was a AAA arbitration. And yet there was a question as to whether the clause covered the scope of dispute that was being dealt with. And the second circuit said, we find it ambiguous. It's an argument, maybe it's covered, maybe it's not. So we're finding that it's not clear and unmistakable evidence that you delegated this to the tribunal and we're going to look at it ourselves. So even there when the AAA, I think is clear when you look at the history, the legislative or statutory history, when those rules were promulgated that they had first options in mind and they wanted to make this delegation. That's not the case for the 1976 Ancestral Rules for certain. But even in a case governed by the AAA rules, the second circuit saw that there could be exceptions based on the particularities of that case. And that's what we contend should happen here. Particularly also, I would also note with both Chevron and Silex, which contain the language about the Ancestral Rules delegation, I note that the parties in those cases did not brief and argue that issue. So in that respect, the court didn't have the full ability or the full opportunity to hear argument on that. And to the extent that they just accepted or acknowledged that point and were happy with that standard of review, we don't think that that should bind us going forward. And in that sense, we have called that dicta. Okay. You have authority for the judicial review model under Indian law. Do you know what would be the standard of review? The cases don't seem to speak to it. Is it de novo review on arbitrability? Is it review for reasonableness? Is it review under the US super deferential? Does this derive from the essence of the contract standard? What is the level of scrutiny? I understand the question. I don't know the answer. And I apologize. I can get back to the court on that if you would like. Okay. Thank you, counsel. We'll give you a little time for rebuttal. Thank you. We'll hear from the other side in a minute. James Boykin. Thank you, Your Honor. I'm James Boykin on behalf of Deutsche Telekom, petitioner and appellee. I will first address the argument that the second issue on appeal as to whether the district court erred in not giving India a second round of briefing. That's foreclosed by their own conduct. P&ID gives the state an absolute right to invoke immunity defenses, but it also recognizes the inherent right of the sovereign to choose to raise immunity defenses together with merits defenses. However, the consequence that it would in so doing, it foregoes the right to have the immunity determination made as a threshold matter. In this case, India did not raise any colorable argument of immunity, but even if one were to look inside and their motion to dismiss and find a colorable argument of immunity, one cannot overlook the fact that India raised merits defenses. And those merits defenses were specifically that there was no investment and there was no investor. Now India tries to say this was colorable at the time and was cleared up by next era. That is not correct. And they do say those are merits issues. India was presenting them as jurisdictional arguments, right? Right. But this court's clear precedent at the time in Chevron and Stilex held that these do not go to jurisdiction or immunity. And then that goes to whether the colorable jurisdictional arguments, not whether they're merits. And we say, yes, the merits arguments. But no, I think the question is maybe I'm misunderstanding the architecture here, but I thought those are being presented as jurisdictional arguments. You disagree that the jurisdictional arguments you may, let's just suppose you're right about that, but that doesn't answer the question of whether they're colorable jurisdictional arguments. And if they're colorable jurisdictional arguments, India did not then need to go on and make merits arguments. Definitely. It could have reserved their opportunity to make other merits. Fair enough. In that framework, I would say they're not colorable because Chevron and Stilex have already held that those defenses are not immunity arguments. They go to... But what about the point that as to that, what about the point that even next era hadn't been decided? Right. So we were in a Chevron-Stilex land. Yep. There was a district court decision, as counsel pointed out, that the district courts went two different ways on the next era question. So was that district court decision that went the way opposite of the way we saw next era, did they get it so wrong that actually it doesn't even meet the Bellevue Hood standard for whether it's a substantial argument. Next era didn't decide any question that was relevant to this case when their motion to dismiss was filed. And India's own brief, or the reply brief from page six acknowledges that next era really concerned Spain's legal capacity to arbitrate. It had to do with a question of EU law and whether Spain could have the legal capacity to arbitrate with persons within the EU. The questions that they framed in front of the district court in the motion to dismiss in this case were clearly covered by Stilex and Chevron. On their motion to dismiss, page 27, they complained that the supposed investment under the agreement was indirect. And that in page 26, they talked about BT's status as an investor. I'm not sure. And there's nothing about Germany's capacity to have entered into the agreement with India. There's no allegation that the treaty was never ratified, which would go to the existence. It has to not even be colorable, including on the direct indirect one. And just to tease out what exactly the colorability threshold entails, suppose you have a situation in which the panel precedents that you're relying on, and again, we're in a pre-next era stage. Suppose you have a situation in which the panel precedents that you say make a claim non-colorable under those precedents included a dissent. Then would you say that the argument is just non-colorable because the panel precedents say they don't go forward, even if there's a panel dissent and the end, the case has never gone before the on bank. The issue has never gone before the on bank. Yes. If it's controlling precedent, it's not tolerable. And it's never gone before the on bank court and it's never gone before the Supreme court. I think there's precedent in this circuit that it's bound to apply a panel decision. Oh, there's no doubt. We're bound by it. I think there's at least a subsequent panel would be bound by it. I guess my question is, is it colorable in that context? Right. Right. But the question, these questions of investor investment have been settled with Chevron Stilex and next era did something. Were they so settled that it, were they so obviously wrong that it's not even colorable? I get, I know that there's panel precedents that you say make them wrong. The question is whether they're not even color. In our view, if they're foreclosed by clear circuit precedent that's been consistently applied, then they're not colored immunity defenses because the other rise, the result is going to be that every state will come and reassert merits defenses as immunity defenses and claim they're entitled to the two-step process. And this circuit court can say over and over again, those are actually go to the merits and it must be the case. Well, there's definitely a colorability threshold. And so you're right that at some point something becomes non-colorable. I guess the question is, it's how strict is that standard? It's, it's, it's pretty low. It's in PNID. It has to be plausible, but our position is that once it's foreclosed, one can imagine lots of cases where there's binding circuit precedent and a plausible opportunity for in bank or cert, like they take a, they take the appeal and say, um, they, they seek initial in bank and well, that would be pretty intense, right? But if you read next era, it firmly decides something new that is not relevant to this case, but it very heavily relies on Chevron and Stilex. And those are, there's no indication that Chevron and Stilex are set up for on bond for view of, or that there's questions about their authority. In fact, this court just relied on them in, as my colleague pointed out, a number of consolidated cases concerning the inter, you know, EU dispute in Spain's authority, power and arbitrate and district courts reached divergence results on that because it involved the sovereign saying we are constrained by EU law. That was a novel question. That was a colorable argument of immunity, but Chevron and Stilex on which next era relied, those are settled. There's no, so these arguments weren't colorful, uh, under the very low threshold and see that it's, but is that, and I think there's some, there's also, they knew they weren't colorful and one other indication of the lack of colorability of the argument is that in these briefs, it's framed as our proper offeree argument. And in the first, they filed on June 24th, a statement of issues that the district court aired in holding that the arbitration exception applied in their brief and their statement of issues. They say the district court aired in not giving DeNova review to a proper offeree defense, but they never made a proper offer E defense to the district court. They don't use those words in their motion to dismiss. Those were proper already defense. Wasn't even the statement of issues after they filed appeal that those words emerged and they encapsulate investor and investment. They emerge after next era. So what they're doing is essentially rewriting the motion to dismiss to make it look like it was something akin to that. What was undecided in next era, but it's not, there was never first, never a proper offer E defense argued to the district court. So it's hard to criticize the district court for not having ruled on an issue not put before it. And second, what is a proper offer E under the bit? Can I ask you a question about the incentive dynamics that would be at play if we intrude colorability in the way that you are, because in the way that I think your argument suggests, because I take it that what would end up happening is that a foreign sovereign because they'd be worried that the jurisdictional arguments they made may be seen to be non-colorable under circuit, under panel circuit precedent would feel like they need to make every merits argument that they have in their initial pleading. So you could have a threshold jurisdictional argument and then you have 27 merits arguments that follow it, all of which are going to be briefed by a foreign sovereign and the district court understandably would say, I don't want to deal with all these merits arguments because I think this is a, there's no jurisdiction here. And then we'd be in a situation in which that all could have been resolved at the jurisdictional stage, but then the foreign sovereign would because of concerns about being deemed to have waived merits arguments would have felt the need to develop and introduce that kind of array of merits arguments. The foreign sovereign need not have such a concern under P and ID, which expressly recognizes it's right to a two step process when it raises colorful immunity. Right. But it displaces all the load bearing weight on whether it's colorable. And I guess what I'm saying is if we don't have a very, very low threshold for what's colorable, then a foreign sovereign is going to be careful. Just can't risk it. You just got, you got to include all your merits arguments because I could be seen to,  for example, in this case, even if there's not next era hasn't come along yet, maybe Chevron and still, I'd say that this is non colorable and therefore I'm just going to end. And India happens to have a couple more merits arguments. I'm sure there's other cases in which a foreign sovereign has many, many more merits arguments than that, but they would feel compelled at the threshold to include all of those. And I just wonder whether that's a healthy incentive dynamic. It means the foreign sovereign has the incentive to raise all of its Colorable immunity arguments in its first brief. And it has the right to choose to raise merits arguments at the same time or not. So it cannot waive merits arguments. If it raises only colorable immunity arguments. And so the policy in the administrative angle that your question was approaching is, is better served by sending a message that if you're going to invoke the two-step process, pay attention to this circuit's precedent about what is an immunity objection and what is not. And that's a reason that's still a low standard of colorability. If a colorable argument we admit should have a low standard, but to have a decision that requires sovereigns to look at controlling precedent of the circuit as to where that line has been drawn. Suppose you have a situation in which the circuit in which you are is an outlier. So you have panel precedent that let's just say clearly forecloses an argument, but then every other court of appeals, there's eight other courts of appeals that are pronounced on the question that disagree. Would you say that the argument is non-colorable and therefore all the merits arguments have to be included because in this circuit, the law points in a particular discretion and it's clear in this circuit, it's only panel precedent. The panel precedents. I would say it's colorable immunity and I've never said they have to include merits arguments with a colorable immunity. A sovereign has a right to make that choice. A sovereign has a right though to a threshold determination of immunity. So if you had eight other circuits, that would be colorable. But once the sovereign brings in non, what are clearly merits defenses, it has waived its right to a second round of briefing. That's the only conclusion for which we're advocating that they've not included merits arguments. And the judge was entitled to rule on them and it gets us into sort of the, the judge was entitled or obligated under the law because of the uncontrolled rules and that the parties delegated the intent to decide issues of arbitrability to the arbitrators. And my colleague said that the judge did not consider the intent. The district court looked at the uncontrolled rules. He construed the treaties of contract and he considered their extrinsic evidence. And he said, even if it were proper for me to consider that extrinsic evidence, it doesn't override the language in the contract that has the uncontrolled rules and the delegation. And as for the background law of India, requiring DeNovo review, they did get DeNovo review of the arbitrator's decision by the Swiss federal Supreme court. And there's no proposition of law that requires a court of secondary jurisdiction like this, like a district court sitting as a court of secondary jurisdiction in a convention case to follow Indian law. Rather it has to follow Supreme court and look to the fact that the uncontrolled rules delegated these questions to the arbitrators. And on page 25 of our brief, we cite a number of cases that require the district court to defer to the judgment of the court of primary jurisdiction that scrutinized the award. And especially if they vacate the award. If the court of the seat confirms an award, it should be at least entitled to the same degree of deferences when it vacates. And that's what happened here. All of these issues have been aired and ruled upon. The district court's rationale on the merits, looking past immunity to the merits, was that arbitrability was assigned to the arbitrator through the incorporation of Ansatral. And for that reason, the district court couldn't review, couldn't review the decision. And that's different from the alternative that you just floated, which is the district court can't or shouldn't review arbitrability because a Swiss court has decided. Yes, that's different. Those are two distinct lines. The second one raises all sorts of questions about the issue preclusive effect of foreign judgments, which the district court didn't get into. And the third one is, is the issue potentially messy? I would think that one is a little uncomfortable as an alternative. And you need not reach it because the district court. Let's go back to that's what I thought. So that takes us back to is the issue off the table by virtue of incorporation of Ansatral rules. And you have precedent, you have some good precedent, no doubt, but this, this contract seems to provide for Indian enforcement law to govern enforcement questions. And if it is the case that Indian enforcement law has this model that arbitrators decide arbitrability questions, and then there's judicial review, why don't we follow Indian law for the contract? Well, I would say they did get the judicial review that when they, they agreed, did Deutsche Telekom and India agreed on the seat of arbitration in Switzerland, where the law is that the Swiss federal Supreme court reviews questions of BG. I mean, first options. And this court, when we disagree with their contractual interpretation, that's in the brief, but this court, the Indian law does not so clearly override the evidence of intent. And judge Leon at the district court level took it into account. He referred to it as extrinsic evidence and he said it didn't override. And that's a factual finding that you would need to find was clear error. And then there was that there was a lack of intent to refer questions of arbitrability to the arbitrators because he did look at India's evidence and said, even if I were allowed to take in all of this extrinsic evidence, it doesn't outweigh. I'm not sure why it's extrinsic evidence. We're construing the bit and one provision, which incorporates on to trial, which cuts in your favor. The other provision says apply Indian enforcement law, which in their favor and least than interpreted dispute about. So let's look at the bit and what it says, because it doesn't say apply Indian law to enforcement. Arbitration should be enforced in accordance with national laws of the party where the investment is made. Right. And like their, their argument that enforcement can only happen in India. I completely disagree with, but their narrower argument that Indian enforcement law governs enforcement wherever enforcement happens seems, I don't want to confuse things, but seems at least color. Well, it was, first of all, it was waived because it was never made to the district court and all they raised in front of the district court were merits defenses. So second in our opposition to their motion to dismiss, and I don't have the page references in my head, but we, we had, we explained what this clause means. It may also be in our pie, but there are authorities that explain that this is a guarantee that states will not change their laws when it comes to enforcement. So you can make it more difficult. You say it is uniquely addressed to India and prohibits India from imposing distinct enforcement. Like they can apply their generally applicable law of arbitral enforcement. Right. There's target. This reads more broadly though. This is our, the award shall be enforced in accordance with the national laws of India where the investment has been made. Right. Which is, which here is India. Right. And, and if we wasn't the opposition to the motion to dismiss, there are authorities that look at provisions similar to this, that say that this type of phrase, what it means is that a state is promising not to change its laws to make enforcement more difficult. It doesn't, it cannot be the Germany and India have the power in a treaty to impose upon a jurisdiction, a standard of review. That court must comply with the laws of the United States. And I, I understand why you say that. And we're not yet, the word shall be enforced in accordance with all, let's assume Indian law does require to know about review. They obtained an overview at the Swiss federal Supreme court. We sought confirmation and recognition. That's not enforced. Suppose that the agreement actually forecast everything that's come to pass. And suppose that the agreement, the provision actually spoke clearly to this and just said, the arbitrators determination shall not be final. And a court of judicial review in any other country shall, of course, under the principle of competence, let's spell it out shall have authority to review that determination. And are you saying that that wouldn't be operative here? I think it would be a court could choose two sovereign states cannot contract and affect the court's jurisdiction to other foreign sovereign States, no more than two private contracting parties. No, but on the question of whether the arbitrator's determination is final and conclusive and can't be reviewed by another court by a court, if it's not final and conclusive, then it probably wouldn't be a convention award because the convention, I think you have to have a final award to, or it couldn't fit under the FAA. It's not final and binding. Conclusively resolved by the arbitrator and then subject to judicial de novo. I mean, it might be de novo or it might be for a reason. It's also the standard. I mean, I think because what the district court said and understandably light of the language in some decisions said is that because the onsen trial provision provides for the arbitrator to decide arbitrability and the incorporation of that provision means that not only the arbitrary gets decided, but that the arbitrator's decision of it is conclusive of any judicial review. And all I'm saying is, suppose you have a contract that just says no under this agreement isn't intended to do that. What this agreement is intended to do is to preserve judicial review. Right. If you had a contract that said, no, we intend to pursue preserved judicial review of issues of arbitrability, then you, that there would not have been an intent to delegate those issues and be, but because I know some of the arguments you were making was that a U S court would never have the ability to give effect to such a provision. I had understood your question to mean more to be broader than on arbitrability, because the presumption is that courts review arbitrability and first options is an exception. It was saying here in was getting at that the law of two contracting parties cannot expand the scope of the federal court's authority, but they can of course, if it's evidence of intent on the question of arbitrability that needs to be let me try it. Let me try it this way. Okay. To do private parties have the power to contract for an arbitration scheme where the arbitrator decides arbitrability in the first instance and then enforcement courts review those decisions. Yes. Okay. So then we're just talking about whether this clause overrides the reference to the, accomplishes that not withstanding the reference to the district court found that it did not. And I think it, I don't know that the district court found that it did not. I think the district court talked under the language of some of our decisions, the mere incorporation of the answer trial means that everybody's off. Okay. Respectfully, you're out of court from the district court at page eight says, while India purports to offer extra contractual evidence, and just have a ticket for this, that would be contractual evidence. So I'm not relying on that, but he, he did consider this thing as part of, he says, even assuming it would be proper to consider it's sufficient to overcome the clear and unmistakable evidence found in the bits incorporation of the answer trial rules here. It's just the incorporation of the answer trial rules. He did. He thought, and I'm not saying that there's not support for that proposition there is, but he just thought that that was, that was the end of the matter. He thought that that cause wasn't enough to override the clear and unmistakable evidence found in the bits incorporation of the answer trial. So we rely. I mean, he did consider it. He didn't ignore it. We don't, we agree with him that that second sentence isn't sufficient to override the preference of the answer trial rules. And I will also, we have other evidence of the party's intent is when they chose Switzerland and they, they got de novo review of all these issues in Switzerland. And this court, the district court is simply applying us procedural law. What, what, what, what does us law require me to do when I'm sitting as a court of secondary jurisdiction? I defer to the arbitrators and, um, and, and I'm going to go back to our cases on page 25. There are, and I'm not invoking these as race judicata, but simply there is a public policy in the United States of recognizing arbitration awards. And there's a consistent line of cases that say we give significance to the court, um, to rulings on the, of the court at the seat, in terms of vacature. Our point is confirmation is at least is worthy of the same dignity as if a court had vacated. Did the Swiss court air in reviewing or the arbitrability questions de novo? No, that's Swiss law. That's well established Swiss law. That was known when the parties chose, um, Switzerland as the seat of arbitration. Um, so then this whole thing, this whole question comes down to the difference between the law of the seat of the arbitration and the law of a secondary enforcement court. It's not, it doesn't come down to the line between arbitrators and courts, which is that's right. District court seemed to think right. And the law in Germany required to go to review. Sorry, counsel. Your question is more important. Well, I think the judge would like to hear your answer. Okay. Well, I'm sorry. I'm sorry. Um, okay. The law in Germany required de novo review of these questions and the common Irish considered investor and investment and found agreed with the Swiss federal court and the arbitral tribunal. The law in Singapore required to know. So if that's true, and this sentence read in light of those, you have to read this sentence to mean, um, arbitrator decides arbitrability. Swiss court gets to review those questions. De novo, but no other enforcement court can.  There's that, that does not come from BG or Chevron or any of those cases. It's, it doesn't, it sounds plausible. I'm just not sure where it comes from. I was about to suggest that I think at least this is just my opinion that a lot of people are uncomfortable with arbitration. All right. And that what was contemplated was that these sovereigns who have a lot of experience, a lot of legal talent available to them make these decisions to arbitrate because of the incredible financial awards. And the only way they get these awards is not to have these matters bogged down for 20 years in the Indian courts or elsewhere. So now we have two sovereigns. They enter into an agreement to arbitrate. They've chosen the court that they want to review any questions. They've been there not once, they've been there twice. And the Swiss court has ruled. And so now what's left for what we're calling the court, a secondary jurisdiction. And this court has issued a lot of very strong opinions saying we're out of it basically. And we've fooled around with what does arbitrability mean? How broad is that term to be interpreted? And maybe we're going to switch to a different arbitration system than was described in BG versus Argentina and subsequently by the Supreme Court. But that's what's so troubling that this is not the normal way that things go and what we don't trust sovereigns to make these decisions in their own interest. And therefore this enforcement role of the secondary court is very limited. We don't start all over again. Now maybe all that's going to change and we'll see what position the Justice Department starts taking in these cases. But that's why it's very troubling to me that we've had all these proceedings been twice to the court that the parties chose. And now basically what I read the district court as saying is that the DC circuit has made it very clear what its position is on a lot of these issues. And basically there's a very limited role for the enforcement court. It has to find three things. It finds those three things. And its role is done other than issuing the orders and moving forth on, you know, even the award goes back overseas in this case. So that's what's troubling to me here. And if we're going to rewrite this whole scheme, fine. But we have to be clear that is what we are doing. Your Honor effectively encapsulated our position. There's no proposition for a de novo review by every court where recognition, confirmation and recognition are sought. You heard counsel for India say though that they had not had the opportunity to raise these merit defenses and your response is, well, they raised some. And the law is you get a chance to raise merits defenses and those you don't raise you forfeit. And that's what happened here. And there's a comfortable feeling about immunity that necessarily our court has. And that's what I hear coming up in all these questions. Maybe I misunderstand my colleagues concerns, but that's just one view. And so what's your best answer to satisfy what I'm identifying as a level of discomfort here with the system that the Supreme Court has endorsed, that Congress has endorsed in several actions. And now this court has repeatedly endorsed. And if such a level of discomfort exists, this is the wrong case to address it. India has litigated all of its objections before the arbitral tribunal for the Swiss Federal Supreme Court. They were briefed before the court. They went before the district court and asked for a stay to go back to the evidence that would result in vacature. And what would render it in the district court, they said, could render it moot. He let them go stay for a year. Swiss Federal Supreme Court said, no, we're not going to vacate. Those are the same facts about illegality that you knew during the arbitration and that they found you waived. They tried the same argument, the Singapore Commercial Court, all of the same arguments. Justice Reyes writes a wonderful decision analyzing each of them de novo. The Singapore Court of Appeals analyzes all of these questions. They have had five opportunities. One last question, which is just to make sure I'm understanding your arguments about waiving merits issues. If we think that the arguments that India presented as jurisdictional arguments are colorful, colorful jurisdiction arguments, but we agree with you that they actually ultimately don't go to jurisdiction, they go to scope. But let's suppose we think that they're colorful. Then you don't say that if that's true, India waived its ability to present the merits arguments that aren't wrapped up in jurisdiction at all, that the district court just didn't pronounce on at all. If they raised arguments on the merits together with colorful arguments of immunity, the essential security question they invoked in their motion to dismiss, that was a merits question at the arbitration. That wasn't jurisdictional. They raised questions of you have to read their motion to dismiss and find it only raises questions of immunity. Colorful questions of immunity. And we say it does not. Investor and investment, that's Chevron and Silex, but there was also that, you know, and there's pages devoted to briefing allegations of illegal conduct. And yes, they preserve the right. I'm just talking about the merits arguments that the district court didn't touch on. The district court said is enough is enough. I'm not going to look at those merits arguments at all. You should have flagged them, but you should have briefed them, but you didn't at all. Those merits are to those. If we disagree with you on whether the jurisdictional arguments they did raise color so that we think they were colorful. And I'm not aware of any reason that somehow they waived the merits arguments that the district court didn't touch on at all. But maybe I'm missing something. If you find the, the, the only raised colorable immunity objections, then the PNID two-step process must apply. And our position is there is nothing in their brief. Investor and investment were just the two we showcased, but the brief, I mean, in the indirect nature of the investment, the, there's, we feel that it's replete with what are obviously not jurisdictional and they shouldn't be afforded another second round of briefing on these questions. And as an equitable matter, they had five days, more than five days and opportunities on these issues. Just to be sure. I understand all the bidding. We've been talking about a lot of different judgment, the Swiss court on direct review or confirmation by the, at, in the seat of the arbitration, they reviewed arbitrability de novo. Yes. The Singapore court treated the Swiss courts determination of arbitrability as issued preclusive. Correct. My understanding. It may be on some issues it did its own. And I thought that more, more importantly, the Berlin court reviewed arbitrability de novo. Yes. Was that court wrong? No, that's what German law requires that court to do. So the Swiss court can review arbitrability de novo and the German court can review arbitrability de novo. Yes. And in front of the German court, it was a question of article five one C under the New York convention. Was there, was this within the scope of the agreement to arbitrate? They were, it was a merits defense under the convention. And they are entitled to review that question de novo because it was presented as a merits defense. They, they of course looked at the, yeah, Swiss federal court. They don't think the German court gave it claim perclusive effect. It analyzed the questions, analyzed the defense. And that was the framework in Singapore. It was always presented as an article five one C defense. That's what Chevron and Stilex told us. That's how my colleague, Mr. Holland in the case, you know, that my colleague referred to Marseille, Clinton presented the argument that a five one C defense outside the scope, which necessarily brought back an issue of immunity. But here they raised an immunity objection. They're relying on PNID to say, all we did raise were colorable immunity arguments so that they get another round of briefing. And that's the, that's the, what we take issue with. So the other argument, surely that they make is that after things had proceeded, they discovered an investor and a company was threatening India's national security. So it wanted to act and surely arbitration doesn't force you to continue in an agreement where your national security is at risk. And arbitral tribunal found that was a pretext to expropriate the commercial lease, which India then subsequently leased out to a competitor. So if it's national security was at stake, presumably India wouldn't have continued to use the S band for commercial purposes. But that, those were the issues decided by the arbitrators in the arbitration and the compensation. And did they get the opportunity to have that reviewed? They know. They raised it before the Swiss federal Supreme court, the central security interest and the Swiss federal Supreme court. So the answer is yes. Yes. Not before the district court. Not before the district court. That, that, that is correct. I think they reserved it before the district court. And again, we come back to, you know, we're wrapped up before it was everything in there on the merits and they shouldn't get another chance. If they wanted to raise that, they had their opportunity. Okay. Thank you. Counsel. Well, thank you. Yeah. Three minutes for rebuttal. Thank you, your honors. So just a few points on colorability. I have just four points that I'd like to make. First is just to reiterate that there really can be no doubt in, in our view that our immunity arguments were colorable at the time in September, 2021, a full three years before next era, two came down. You had disparate divergent, excuse me, district court decisions in next era too. You had a two and a half hour oral argument, 18 amicus briefs. You spent approximately 10 pages on this particular issue. There was no way that it wasn't ambiguity or uncertainty at that time. Also as chief justice noted, it would create, you said a difficulty. And I would say it would become untenable. If colorability was as high of a standard as DT is suggesting it would be because foreign sovereigns indeed would feel compelled to have to brief all of their immunity and merits defenses at once in order to avoid this result in the event that the district court not only denied their motion on to dismiss on immunity, but found that they really disliked the arguments so much that it would create a difficulty for DT and ID in permitting foreign sovereigns to brief immunity before the merits is to avoid the burden of litigation of suits. So if you have to brief them altogether, then you're basically doing away with that framework. A third, there was an arguable circuit split at the time. I'm still is with the fifth circuits, Al Qarqani case that we've briefed in our papers. And finally on that point, there is no Supreme court jurisprudence on this. Spain has announced publicly that they are putting in a petition for certiorari. This is not a case where you have concrete circuit court precedent that has been in place for years that is being ignored by a party far from it. You have evolving jurisprudence and you have no Supreme court decision. Second is that even if this court would find that our immunity defenses were not color ball. And again, for all the reasons, we think there are more than color ball. Then the court abused its discretion by finding that we waived our right to raise any additional merits defenses and to brief them. And we cited several cases in our briefs that I would just urge you to take into consideration, particularly the sovereign, excuse me, the practical concepts versus Bolivia, where they say sovereign should be enticed to appear in our courts and we ought to give them every opportunity to make arguments in the BG versus Argentina case, which I hesitate to raise given the history. But on this point it wasn't reversed. That's where the district court was told, excuse me, ordered that there would be additional briefing, even though it was highly skeptical of Argentina's arguments that it had raised. And that was the language that they used. That was after the court denied Argentina's motion to vacate and there was a cross motion to confirm and the district court didn't rule on it. And then finally in Shotsky versus PLO, this court reversed for an abuse of discretion, finding that the sovereign had, excuse me, not the sovereign, but instrumentality or the PLO had actually reserved its jurisdictional objection and shouldn't be found to have waived it even though it had participated. Suppose we think the immunity defenses were colorable, but wrong as community defenses. So I'm on the, the point about assignment to the arbitrator or not. Isn't there, you take your point about Indian law seeming to, um, adopt this model of judicial review, but your friend makes a competing argument like, okay, there, there was judicial review in Switzerland. Um, there was judicial review in Germany, which is one of the courts of one of the signatory countries. I mean, who the heck is DDC? This is just, this is just secondary enforcement in a country whose background rules her BG just don't presumptively recognize this model. Well, that's also, and I take your honors comment about our form non arguments, but that's why also we think that this case should be heard outside of the United States, but quite apart from that. Yes. And I'll leave that apart. I think that my DTS counsel's reading of the provision and the bit doesn't accord with its text. It doesn't say what he thinks it says or what he thinks was the motivation behind it. There's no, you can't read that by the text and I think once again, we go back to the party's intent and the fact that there was DeNova review in Germany, um, that shows that the parties had that or it's consistent with what I'm saying is the party's intent because when they enter into an agreement to arbitrate with the onset trial rules, they expect that secondary jurisdictions as well as the primary jurisdiction is going to have review authority. There is nothing in there. As far as us law is concerned, the fact that you had DeNova review at the seat does nothing to help them with a delegation argument because the Supreme court has said, you look for clear and unmistakable evidence that the party has intended to delegate to the tribunal. Um, that now they're talking about delegation to the seat. There's nothing there and there is no issue, estoppel or issue preclusion in New York convention cases. Um, there is very limited when you see in the New York convention. I don't want to get into preclusion as a basis for affirming. I'm just trying to think, can we affirm on the ground that Indian law does allow for judicial review of on arbitrability? But you got that, you got that twice and it doesn't, it doesn't compel every enforcement court to redo the same question. Again, with respect, I don't, I would say no, because that's not the question. The question is did the parties clearly and unmistakably delegate the question of arbitrability to the arbitrators? That is no. And so the fact that a court in Germany, a court in Singapore, a court in Switzerland has looked at it, doesn't bear on that question. We did not delegate exclusively to the arbitrators here. And therefore the court itself, the U S court needs to look at it. Understood. Thank you. Thank you very much. Thank you counsel. Thank you to both counsel. We'll take this piece on our solution.
judges: Srinivasan; Katsas; Rogers